## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UHS OF PROVO CANYON, INC.**<br><br>Plaintiff,<br><br>vs.<br><br>**ROBERT BLISS**<br><br>Defendant. | **MEMORANDUM DECISION AND PRELIMINARY INJUNCTION ORDER**<br><br>Case No. 2:24-CV-163-DAK-CMR<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on Plaintiff UHS of Provo Canyon, Inc.'s Motion for Temporary Restraining Order [ECF No. 13] and Defendant Robert Bliss's Motion to Dismiss Pursuant to Utah's Uniform Public Expression Protection Act [ECF No. 30]. On July 11, 2024, the court held a hearing on the motions. At the hearing, Charles E. Weir and Brett L. Tolman represented Plaintiff UHS of Provo Canyon, and Robert O. Rice, Whitney H. Krogue, and Aaron C. Hinton represented Defendant Robert Bliss. The court took the motions under advisement. After carefully considering the parties' memoranda and arguments as well as the facts and law relevant to the pending motions, the court issues the following Memorandum Decision and Order on the pending motions.

## BACKGROUND[1]

Plaintiff UHS of Provo Canyon, Inc. ("Provo Canyon") is an intensive, psychiatric youth residential treatment center in Utah, licensed by the State of Utah and accredited by the Northwest

---

1   The court notes that the findings of fact and conclusions of law made by a court in deciding a preliminary injunction motion are not binding at the trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *City of Chanute v. Williams Natural Gas Co.*, 955 F.2d 641, 649 (10th Cir. 1992), *overruled on other grounds, Systemcare, Inc. v. Wang Labs Corp.,* 117 F.3d 1137 (10th Cir. 1997) (recognizing that "the district court is not bound by its prior factual findings determined in a preliminary injunction hearing.").

Accreditation Commission and the Joint Commission. Provo Canyon has diagnostically focused programs, including programming dedicated to substance abuse behavior. As a HIPAA covered entity, Provo Canyon and its employees are required to protect patients' private, protected health information. Provo Canyon's agreements with its staff members contain strict confidentiality provisions, including acknowledgements of the highly sensitive nature of the work and legal regulations concerning patient protected health information.

Provo Canyon has been in the media spotlight. In 2020, Paris Hilton publicly alleged that she had been abused while a resident at Provo Canyon in the 1990s. Also, in 2020, Provo Canyon's parent company, Universal Health Services, Inc., agreed to pay the federal government and certain states $117 million to settle claims that its hospitals and facilities knowingly submitted false claims for payment when the services were not medically necessary. These allegations led to media coverage about Provo Canyon and the "troubled teen industry" and a Netflix documentary.

Defendant Robert Bliss is a filmmaker and online content creator who focuses on various social issues. On his YouTube channel, he has posted videos spotlighting homelessness, racism, and net neutrality. His videos have received as many as 29 million views. In December 2023, Bliss applied to work as a mental health technician at Provo Canyon. The mental health technician position Bliss applied for does not require a specialized certificate or license. But it includes contact with and support for many of Provo Canyon's patients. The "General Purpose" of the job, as provided for in the Position Description, is to "[s]upervise patients in their daily activities. Provide a positive role model for patients in personal dress, grooming, attitude and behavior."

Provo Canyon asserts that Bliss sought the position to obtain information to create his next viral video. In his resume, Bliss claimed to have experience working with the type of patients Provo Canyon serves and he did not include numerous items about his actual background and work

history. Bliss interviewed for the position in January 2024, and Provo Canyon offered him the position subject to Provo's background checks. His background checks came back clean, and Provo Canyon states that it had no cause for concern.

Bliss executed several acknowledgements and agreements with Provo Canyon, including a Confidentiality Agreement. Bliss agreed not to divulge patient information to the public and further acknowledged he understood and agreed to abide by the federal and state privacy laws. Bliss signed additional acknowledgements regarding the highly confidential nature of the position.

Bliss also told Provo Canyon that he had a light photosensitivity condition that would require him to wear a baseball hat and sunglasses while he worked. Provo Canyon claims that this was Bliss' means for wearing a hidden camera while working at the facility. Bliss, however, rarely wore the sunglasses while working but kept them affixed to the top of his baseball cap most of the time. In publicly available videos and photos of Bliss prior to his hiring, he is not seen wearing sunglasses or a cap. While Provo Canyon alleges that the condition was a ruse to allow Bliss to record during his time in the facilities, Bliss retorts that his photosensitivity condition is real.

Bliss attended a new hire orientation between February 12 to February 15, 2024. During the orientation, Bliss mostly interacted with other staff and new hires, but had some interaction with at least five patients. He also obtained keys to the facility and voluminous training materials that contained, among other things, operational information, such as evacuation procedures and emergency shutoffs. Bliss took his orientation materials with him and has not returned them to Provo Canyon.

After orientation, Bliss began shadow shifts in which he would shadow a staff member assigned to a group or "cottage" of patients. The shifts occurred on five different days—February 16 and February 19-23. During those shifts, Bliss had regular interactions with patients. For

example, on February 22 and 23, Bliss was assigned to the Lone Peak cottage, a stabilization and assessment cottage where patients are moved when they've exhibited an increased safety risk and require more intensive programming and observation. Throughout his shadow shifts, Bliss had access to patient observation documents. These include a form commonly called a "Q15" which accounts for where patients are spending their time, as well as more detailed clinical information, such as patient risk factors like suicidal thoughts or sexual victimization.

At times, Bliss was observed adjusting his glasses and pushing a button on them. He was also observed adjusting his shirt in a way that indicated he may have had another recording device beneath. Provo Canyon later learned through review of surveillance footage that a patient gave Bliss a stack of papers and Bliss was observed angling his glasses at each page, proceeding to take the stack of the papers to the bathroom where there are no video cameras, and then returning and handing the papers back to the patient.

A staff member who accompanied Bliss during his February 23 shift noticed Bliss was acting strange around patients. Instead of sticking to the normal check ins contemplated by the Q15 forms, the staff member noticed Bliss interviewing the patients regarding their experiences at the school, including questioning how often they "see sunlight." The staff member found these conversations to be inappropriate for anyone in his role or with Bliss's minimal tenure.

After learning of the staff member's observation of Bliss, Provo Canyon researched Bliss online and uncovered his career as an activist filmmaker. Staff planned to meet and confront Bliss during his next assigned shift on February 25, 2024, but he texted Provo Canyon's program manager on the 24th, stating that he would not be coming back to work due to bad news from his family. He said he was going back to Michigan and would have to stay there for a while so he would need to suspend his employment indefinitely.

Notwithstanding the family emergency, Bliss returned to Provo Canyon when he was not assigned a shift. He entered the property for six minutes and was observed entering three different rooms and scanning areas, including the Lone Peak cottage, before leaving. Bliss also returned on February 27 to return his keys. Provo Canyon's CEO asked Bliss to come in and talk and asked whether Bliss had anything to disclose. Bliss refused to speak with him and abruptly left the building.

Bliss objects to much of what Provo Canyon characterizes as "factual background," which he states is largely based on the hearsay contained in the Declaration of Tim Marshall. Bliss points out that Marshall lacks personal knowledge of large portions of the facts contained in his declaration and requests that the court disregard several paragraphs--10, 17, 20, 22, 24, 25, 32, 33, and 35 to 40--for lack of personal knowledge and hearsay.   But given that "[a] hearing for preliminary injunction is generally a restricted proceeding, often conducted under pressured time constraints, on limited evidence and expedited briefing schedules, [t]he Federal Rules of Evidence do not apply to preliminary injunction hearings." *Heideman*, 348 F.3d at 1188. "The Court can consider evidence outside the pleadings, including hearsay, when deciding whether to grant a preliminary injunction." *Nilson v. JPMorgan Chase Bank, N..A.*, 60 F. Supp. 2d 1231, 1238 n.2 (D. Utah 2009). Therefore, there is no basis at this stage of the proceedings to strike the materials Provo Canyon submitted.

## DISCUSSION

Provo Canyon moves for a preliminary injunction and Bliss moves to dismiss Provo Canyon's action pursuant to Utah's Uniform Public Expression Protection Act ("UPEPA"). The court will first analyze Bliss's motion to dismiss because dismissal of Provo Canyon's claims would moot the motion for preliminary injunction and, in connection with the motion for

preliminary injunction, it impacts the analysis of whether Provo Canyon has a likelihood of success on the merits.

### Bliss's Motion to Dismiss Pursuant to Utah's UPEPA

Bliss asks the court to dismiss Provo Canyon's Complaint pursuant to Utah's Uniform Public Expression Protection Act ("UPEPA"). In 2023, Utah adopted UPEPA, Utah Code Ann. § 78B-25-101, to further protect a person's free speech rights "guaranteed by the United States Constitution or Utah Constitution, on a matter of public concern." *Id.* § 78B-25-102(2)(c). Courts are directed to "broadly" construe UPEPA. *Id.* § 78B-25-111. UPEPA also provides that "[i]n applying and construing this uniform act, consideration shall be given to the need to promote uniformity of the law with respect to the uniform law's subject matter among states that enact the uniform law." *Id.* § 78B-25-112.

UPEPA is known as an "anti-SLAPP act." Uniform Law Commission, Uniform Law and Commentary, § 1 cmt. A "SLAPP" is a "Strategic Lawsuit Against Public Participation." *Id.* SLAPPs "are often cloaked as otherwise standard claims of defamation, civil conspiracy, tortious interference, nuisance, and invasion of privacy, just to name a few." *Id.* prefatory note. "But for all the ways in which SLAPPs may clothe themselves, their unifying features make them a dangerous force: Their purpose is to ensnare their targets in costly litigation that chills society from engaging in constitutionally protected activity." *Id.* UPEPA is designed "to prevent . . . the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit." *Id.* § 2 cmt. 2.

In federal court, UPEPA requires a two-part analysis. *See* Utah Code Ann. § 78B-25-107(1). First, the court must determine whether UPEPA applies to the action.  *Id.* § 78B-25-107(1)(a). Bliss, as the moving party, bears the burden of establishing that UPEPA applies

in this case. *Id.* § 78B-25-107(1)(a). Second, the court must determine whether Provo Canyon has a legally viable cause of action—*i.e.*, whether it "failed to state a cause of action upon which relief can be granted." *Id.* § 78B-25-107(1)(c)(ii)(A). Bliss also bears the burden of proving this portion of the analysis. *Id.* If the court determines that UPEPA applies and that Provo Canyon has failed to state a viable cause of action, the court must dismiss the action and " award court costs, reasonable attorney fees, and reasonable litigation expenses related to the motion" to Bliss. *Id.* § 78B-25-110(1).

In opposition to Bliss's motion to dismiss, Provo Canyon argues that Bliss cannot meet either prong of the UPEPA analysis because the First Amendment does not apply in this situation and Provo Canyon's Complaint is sufficiently pled.

1.  Does UPEPA Apply to Provo Canyon's Claims?

Under the first element, Bliss, as the moving party, must establish that UPEPA applies for one of the reasons stated in Utah Code Ann. § 78B-25-102(2). Bliss relies on subsection (c): "[T]his chapter applies to a cause of action asserted in a civil action against a person based on the person's . . . exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Utah Constitution, on a matter of public concern." *Id.*

"To use [UPEPA], a movant need not prove that the responding party has violated a constitutional right—only that the responding party's suit arises from the movant's constitutionally protected activity." Uniform Law Commission, Uniform Law and Commentary, § 7, cmt. 2. "[A] defendant need not demonstrate that their conduct was protected under the First Amendment to be conduct in furtherance of the constitutional right of free speech." *DeHart v. Tofte*, 533 P.3d 829, 843 (Or. App. 2023). In other words, the step one inquiry "is not an inquiry

into whether the defendant's conduct was wrongful." *Id.* That analysis comes in the second step. Instead, "[t]he scope of the first anti-SLAPP step is narrow; it focuses on the nature of the conduct." *Lowes v. Thompson*, Case No. A178568, 2024 WL 952840, *3 (Or. App. Mar. 6, 2024). "If the conduct alleged in support of the plaintiff's claim is of the sort protected by the anti-SLAPP statute," then the court moves on to the next step of the analysis. *Id.*

In this case, the parties have a fundamental disagreement about Bliss's conduct. Provo Canyon focuses on the protected patient information that Bliss has no right to make public under the contractual agreements he signed with Provo Canyon and HIPAA. Whereas, Bliss focuses on Provo Canyon's involvement in the controversial "troubled teen" industry and the information he obtained about Provo Canyon that is relevant to those issues, which he asserts would not be protected. While Provo Canyon accuses Bliss of obtaining information and footage "with the intent to disseminate to millions of potential viewers," the court notes that there is no actual evidence about what material Bliss will ultimately use in his final product. Moreover, under Tenth Circuit precedent, such conduct is "speech" for First Amendment purposes. *See Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219, 1228 (10th Cir. 2021). "[A] significant volume of precedent from the Supreme Court and other circuit courts protect[] the creation of information in order to protect its dissemination." *Id.* Under this precedent, "recording" information "is speech-creation and, consequently, is not mere conduct." *Id.*

In *Western Watersheds Project v. Michael*, 869 F.3d 1189 (10th Cir. 2017), the Tenth Circuit concluded that the "plaintiffs' collection of resource data constitutes the protected creation of speech." *Id.* at 1195-96. "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Id.* In that case, the Tenth Circuit thought it worth special note that the "plaintiffs use of the speech-creating activities

at issue were to further public debate." *Id.* at 1197.

Bliss' conduct in gathering facts to further public debate on Provo Canyon's role in the troubled teen industry is speech under the First Amendment and is of the sort protected by UPEPA. It is a "matter of public concern" which is "of interest to the community, whether for social, political, or other reasons." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000); *Deutsch v. Jordan*, 618 F.3d 1093, 1100 (10th Cir. 2010). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (cleaned up). Speech on such matters of public concern "is at the heart of the First Amendment's protection." *Id.* at 451-52. "The First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Id.* at 452 (cleaned up). Provo Canyon acknowledges that it is not seeking to stop Bliss from engaging in speech on a matter of public concern or making internet videos on the troubled teen industry.

However, the court agrees with Provo Canyon that healthcare records of individual patients do not implicate Bliss' First Amendment rights. The First Amendment offers no defense where a person entered into an agreement to maintain confidentiality. *See, e.g., Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991). Bliss cannot make the specific psychiatric care provided by Provo Canyon staff to minor patients part of his show. This information is the most private of private issues—communications between children and healthcare staff in a private healthcare facility is not a public matter. Bliss's recording of minors in a mental healthcare facility without their knowledge or consent is not speech on a matter of public concern such that it falls within UPEPA's

protection. Bliss expressly agreed to keep the specific patient information he received at Provo Canyon confidential.

Although the court agrees that Bliss cannot use individual patient information without the patient's consent, Provo Canyon cannot prevent Bliss from speaking at all about his experience. Provo Canyon's actions, business model, tactics, and treatment of vulnerable populations are matters of public concern, as is evident from the repeated news coverage, public documentaries, and recent legislation related to alleged past abuses at Provo Canyon School. While the parties and the court are unclear on the extent of the information Bliss obtained, Bliss surely obtained information beyond individual patient information that would be "of the sort" protected by UPEPA because (1) it is an exercise of the right of freedom of speech guaranteed by the United States and Utah Constitutions, (2) Bliss alleges that he intends to exercise his free speech rights on a matter of public concern, and (3) Provo Canyon's claim is based on Bliss's potential expressive conduct. *See* Utah Code Ann. § 78B-25-102(2)(c). Bliss can speak about Provo Canyon generally, to the extent that it is part of a broader social concern about the "troubled teen" industry. Provo Canyon's operations are currently of interest to the community and the legitimate subject of news interest. Provo Canyon's lawsuit is seeking to restrict speech on not just individual patient information but the more general information regarding an industry that has become a matter of public concern. Therefore, the court finds that UPEPA applies to the information Bliss obtained from his experience that does not involve individual patient healthcare information, and Bliss is entitled to the statute's protections if the court finds that Provo Canyon has failed to state a cause of action upon which relief can be granted.

2. Failure to State a Claim Upon Which Relief Can Be Granted

Under the second part of the federal court UPEPA analysis, Bliss must establish that Provo

Canyon has failed to state a cause of action upon which relief can be granted. Utah Code Ann. §

78B-25-107(1)(c)(ii)(A). This question requires analysis of the claims under Federal Rule of Civil

Procedure 12(b)(6). *See Project Veritas*, 2022 WL 1555047, at *4 ("UPEPA essentially mimics

the language of Rule 12(b)(6) in stating that standards for courts to use when analyzing a special

motion for expedited relief to dismiss based on only the legal sufficiency of the complaint."). The

court, therefore, must analyze each of Provo Canyon's seven causes of action to determine

whether Provo Canyon has stated a claim upon which relief may be granted.

      a.   Breach of Contract

Upon his hiring, Bliss executed contracts with Provo Canyon containing strict

confidentiality provisions, including the Confidentiality Agreement ("CA"), the Applicant

Acknowledgement, and the Position Description. Provo Canyon alleges that Bliss breached the

confidentiality provisions he agreed to by allegedly recording patients and staff members at the

facility and recording or photographing various documents containing confidential patient

information.

The CA states:

> As a condition of employment at Provo Canyon School, I agree not
> to divulge any information(i.e. written, verbal, photographs)
> concerning persons receiving services to any unauthorized
> persons(s) or in any way to make such information public.
>
> I agree to follow the legal regulations concerning a patient's PHI
> (Protected Health Information) as outlined by Health Insurance
> Portability and Accountability Act. I understand that I am required
> by federal and state law to protect the privacy of our current and
> discharged patients and their treatment while at this facility.
>
> I understand that unauthorized release of confidential information
> may make me subject to a civil action under provisions of the
> Welfare and Institution Code. I also understand that the release of
> this information will make me subject to immediate dismissal from
> this facility.

The Applicant Acknowledgement also includes a confidentiality provision:

> Employees and visitors often receive specific information concerning residents (i.e., residents include but is not limited to, patients, students, etc.) and their illness. This information is strictly confidential and should never be discussed with other residents, fellow employees, family or friends. All employees and visitors must fully understand that any information they receive concerning residents and/or activities is confidential information.

Also, among the "Qualifications Required At Entry" for Bliss's position is the "ability to maintain information as highly confidential. Bliss executed an acknowledgment of the Position Description that included the "Qualifications Required At Entry."

Bliss points out that while Provo Canyon relies on the agreements' restrictions on disclosing patient information, Provo Canyon's agreements do not limit Bliss's right to speak about Provo Canyon itself. Bliss contends that Provo Canyon has failed to allege any conduct that violates the parties' agreements because, although Provo Canyon alleges that Bliss holds confidential information in violation of the CA, the CA does not prohibit Bliss from possessing confidential information. The CA simply states Bliss will not divulge or release confidential information, and Provo Canyon has not and cannot allege that Bliss released or divulged any such information. Bliss claims that Provo Canyon has not attempted to state a claim for anticipatory breach. Moreover, Bliss contends that Provo Canyon does not have standing to assert privacy claims on behalf of third parties and Bliss has never manifested any desire to violate the patient's privacy rights with respect to their personal healthcare information.

Again, the court must distinguish between a claim based on Bliss's alleged use of protected patient information and information about Provo Canyon. The CA restricts employees from divulging certain patient information and binds employees to follow HIPAA regulations and state and federal patient privacy laws. It does not preclude Bliss from divulging information about

12

Provo Canyon. In the Applicant Acknowledgement ("AA"), Bliss acknowledged that specific information concerning residents and their illness was strictly confidential and should never be discussed. Therefore, the AA also does not prohibit Bliss from discussing information about Provo Canyon. Therefore, Provo Canyon cannot base a breach of contract claim against Bliss with respect to information relating to its operations and practices.

With respect to individual patient information, the claim is more difficult. Provo Canyon bases its breach of contract claims on Bliss's collection of, as of yet, unknown information. Through camera footage, Provo Canyon has reason to believe that Bliss has recordings and photographs of confidential patient information. The CA refers to "divulging" information and the AA refers to "discussing" information. But Bliss has not done either at this point. Provo Canyon argues that Bliss cannot claim free speech rights with respect to the information he obtained while simultaneously arguing that he will not divulge information. However, he clearly has a right to argue that he has free speech rights as to divulging information about Provo Canyon while simultaneously not divulging any protected patient information in violation of his confidentiality agreements. Bliss states that he has no intention to divulge or discuss patient information in contradiction of the CA or AA and that Provo Canyon has not and cannot allege that he has. It is unknown what information he will use in any forthcoming video.

The Complaint alleges that Bliss breached the CA because he "holds" confidential information in his possession. But the specific language of the agreements does not prevent him from holding or possessing confidential information, only divulging or discussing that information. Provo Canyon has not attempted to state a claim for anticipatory breach. *Lantec Inc. v. Novell Inc.*, 306 F.3d 1003, 1014-15 (10th Cir. 2022) (summarizing the strict requirements for anticipatory breach under Utah law).

At oral argument, Provo Canyon argued that Bliss had already divulged the confidential information because he handed over all of his materials to his attorney. But he handed over the materials to his attorney because Provo Canyon sued him. That is not an indication that he intended to use any confidential information in his work. The lawsuit is the only thing that caused Bliss to give the information to his attorney. Provo Canyon cannot cause such a disclosure through bringing a lawsuit and then claim it supports a previously pled cause of action.

Provo Canyon argues that in addition to the specific "divulge"/"discuss" language used in the agreements, the CA also requires Bliss to follow HIPAA's legal regulations and other federal and state laws, which could support a breach of contract based on Bliss "holding" confidential information. Bliss counters that Provo Canyon has not sued Bliss for violating an alleged contractual promise to abide by HIPAA's Privacy Rule in the Complaint and HIPAA covers employers', not employees', conduct. Bliss also argues a purported agreement to follow the terms of HIPAA is too indefinite for there to be a meeting of the minds on the integral features of the agreement. *Nielsen v. Gold's Gym*, 2003 UT 37, ¶ 11, 78 P.3d 600, 602. Bliss claims that the single sentence confirming Bliss' agreement to follow HIPAA is a generalized statement about applicable laws that no one could reasonably have thought was intended to create legally binding obligations. This argument, however, raises factual issues that do not support a dismissal as a matter of law. If Provo Canyon fully trained Bliss on the HIPAA requirements, the CA's reference to HIPAA could have been clearly understood. The court cannot say at this point of the litigation that Provo Canyon could not demonstrate a binding contract based on a HIPAA violation.

Assuming that Bliss was contractually bound by the Privacy Rule, Bliss argues that the contract claim fails because Bliss's alleged actions to date do not constitute an unauthorized use or disclosure of protected health information ("PHI") under HIPAA for three reasons: (1) Provo

Canyon has not alleged that its information cannot be "de-identified" in compliance with the Privacy Rule, (2) any alleged information Bliss obtained from Provo Canyon is in the custody of counsel and is thus protected by HIPAA's "whistle blower" provision, and (3) in any event, Bliss is not a covered entity subject to the requirements of HIPAA.

Provo Canyon argues that Bliss violated HIPAA as soon as he took the video because HIPAA regulations prohibit the intentional use and disclosure of PHI. Without knowing exactly what information Bliss took, Provo Canyon and the court are left to only guess. However, to the extent that Bliss did take videos or photographs of PHI, it appears to the court that factual questions exist as to whether he could still comply with HIPAA through the de-identification process and as to whether he would qualify under the whistleblower provisions. 45 C.F.R. § 164.502(d)(2) (de-identification rules); 45 C.F.R. § 164.502(j)(1) (whistleblower provisions).

At this stage of the litigation, the court concludes that Bliss has not demonstrated that he is entitled to dismissal of the breach of contract claims as a matter of law. The court and Provo Canyon are unaware of the materials he took from Provo Canyon. However, those materials could be a breach of his contractual obligations to Provo Canyon. There are too many unanswered questions to exonerate his actions at this time. While Bliss has a number of defenses to the breach of contract claim that could likely be successful, the Complaint provides sufficient facts for the court to conclude that a breach of contract is at least plausible. Therefore, Provo Canyon has stated a claim for breach of contract and the court denies Bliss's motion to dismiss.

      b.  Fraudulent Misrepresentation

Provo Canyon also brings a cause of action against Bliss for fraudulent misrepresentation. Under Utah law, a plaintiff has a cause of action for fraudulent misrepresentation when: "(1) a representation was made (2) concerning a presently existing material fact (3) which was false and

(4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage." *Prudential Ins. v. Sagers*, 421 F. Supp. 3d 1199, 1212 (D. Utah 2019).

Here, Bliss applied for and obtained a position with Provo Canyon based on numerous false misrepresentations and omissions. He hid his true purpose for seeking employment: to obtain footage of the facility and its patients. He misrepresented his work history. Provo Canyon acted in reasonable reliance on the representations and had no reason to doubt Bliss. Because Bliss induced Provo Canyon to hire him based on those false representations, Provo Canyon alleges that it and its patients and staff are now faced with injury and damage.

Bliss argues that Rule 9(b) of the Federal Rules of Civil Procedure requires Provo Canyon to plead the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b). To plead fraud with particularity, a plaintiff must "state precisely what material misstatements were made, the time and place of each misstatement, the speaker, the content, the manner in which the statement was misleading, and what the defendants 'obtained' as a result of the fraud." *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1198-99 (S.D.N.Y. 1996).

Here, the Complaint adequately alleges Bliss's misrepresentations. To obtain the job at Provo Canyon, Bliss intentionally omitted his real work history and provided affirmative misrepresentations about his experience. Provo Canyon identifies when he made those allegedly fraudulent misrepresentations and to whom. When reviewing the full Complaint, it provides enough factual support meets Rule 9(b) standards.

Bliss argues that he had no duty to disclose "his true purpose for seeking employment" and

"his past job history as a viral filmmaker and activist." "[I]n order to be held liable for fraudulent nondisclosure, there must have been a duty to disclose." *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1328-29 (Utah 1990). The burden of establishing such a duty is "on the party alleging the fraud." *Id.* at 1329. And the determination of whether a duty exists "is a question of law for the court to decide." *Id.*

Here, Bliss argues that as an entry-level job applicant he had no affirmative duty to disclose his background accurately to Provo Canyon. But as *Banberry* acknowledges, "whether a duty to speak exists is determinable by reference to all the circumstances of the case and by comparing the facts not disclosed with the object and end in view by the contracting parties. The difficulty is not so much in stating the general principles of law, which are pretty well understood, as in applying the law to particular groups of facts." 786 P.2d at 1328.

Here, the court cannot at this stage of the litigation conclude as a matter of law that the particular group of facts at issue could not amount to fraudulent misrepresentation. The very nature of the relationship between Provo Canyon and Bliss was premised on Bliss doing the job and maintaining the confidentiality of the information to which he would be exposed. The parties had agreements to this effect. Bliss's conduct put Provo Canyon in a situation where it felt obligated to sue him to prevent the disclosure of confidential patient information. While Bliss has now responded that he will not disclose any confidential patient information in his work, Provo Canyon did not know that was the case. In his last interaction with Provo Canyon, when he could have given those assurances in person, he allegedly did not say anything about his conduct or intentions and simply left.

Bliss may view this lawsuit as an attempt to silence his ability to criticize Provo Canyon, but he must also recognize that the facts before the court demonstrating the lack of good faith

information between the parties, could equally establish that Provo Canyon brought the lawsuit as an attempt to comply with HIPAA and ensure that no confidential PHI gets disclosed by one of its employees. At the outset of this action, Provo Canyon's allegations, claims, and requested preliminary injunction focused heavily on protecting confidential patient information. The need to bring such an action appears to constitute an injury. The court cannot say at this stage of the litigation that Bliss had no duty to disclose to Provo Canyon anything with respect to his employment, his work as a filmmaker, and his use of the confidential information he obtained, and that Provo Canyon was not injured by Bliss's allegedly fraudulent misrepresentations and deliberate omissions. The court, therefore, concludes that based on the facts before the court, Provo Canyon has alleged sufficient facts for a claim of fraudulent misrepresentation to proceed.

      c.   Federal and State Wiretap Acts

Bliss argues that Provo Canyon has not and cannot state a viable claim that he has violated the Federal Wiretap Act and the Utah Interception of Communications Act. Provo Canyon asserts that while Bliss was training in his new position at Provo Canyon, he wore a recording device connected to a baseball cap and sunglasses that allowed him to record the facility, staff, patients, and documents. Provo Canyon alleges that Bliss recorded throughout his time at the facility, including while he was shadowing staff interacting with patients.

In general, the FWA prohibits the intentional interception of any "wire, oral, or electronic communications." 18 U.S.C. § 2511(1). The FWA includes a private right of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used." *Id.* § 2520. Like the FWA, the UICA's private right of action is expressly limited to "a person whose wire, electronic, or oral communication is intercepted." Utah Code Ann. § 77-23a-11(1).

To qualify as an "oral communication" under FWA, it must be "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). In other words, an FWA plaintiff must allege facts showing it has a "reasonable expectation of privacy." *Stewart v. City of Oklahoma City*, 47 F.4th 1125, 1133 (10th Cir. 2022). The FWA and UICA share the same definition of "oral communication." Utah Code Ann. § 77-23a-3; *see also West v. C.J. Prestman Co.*, 2:16-CV-75-DN, 2017 WL 4621611, *4 (D. Utah Oct. 13, 2017). Thus, both the state and federal acts require a plaintiff to allege facts showing that "(1) they had an actual, subjective expectation of privacy, and (2) that their expectation of privacy is one that society is willing to recognize as reasonable." *Id.*

Here, Provo Canyon alleges that Bliss secretly wore audio and video recording devices when performing his job duties at Provo Canyon. Bliss contends that Provo Canyon's allegations are not actionable under the FWA because Provo Canyon cannot state a claim for communications made by a third party. 18 U.S.C. § 2520. The FWA's private right of action is expressly limited to the person whose communication is in fact intercepted. Here, Bliss claims that the Complaint does not identify any oral communications made by Provo Canyon. Instead, the Complaint focuses largely on alleged communications made by patients. Because Provo Canyon does not have any legal basis to assert claims on behalf of patients or other third parties, Bliss argues that all such claims must be dismissed.

Bliss's position with respect to recordings of patients is interesting in that he argues that he has no intention of violating HIPAA with respect to patient's privacy rights, but he claims to simultaneously be entitled to keep and use recordings of patients interacting with their healthcare providers because the patient would need to raise their own claim. The court does not know the

extent of Bliss's recordings and he has not been forthcoming in briefing as to the nature of his recordings. But Provo Canyon alleges that Bliss was recording while he was being trained by Provo Canyon employees, while he was shadowing other Provo Canyon employees, and while interacting with patients. Therefore, the court disagrees that the Complaint does not allege communications made by Provo Canyon. Any communication by a Provo Canyon employee or staff member is a communication by Provo Canyon. Accordingly, there would appear to be recordings of more than just patients.

Bliss then argues that even if Provo Canyon could establish it made statements that were intercepted, Provo Canyon's claim still fails because Bliss was a party to the recorded conversations and consented to the recording. The FWA generally precludes a cause of action so long as one party consented to the recording. *Id.* § 2511(2)(d). As with the FWA, the UICA generally precludes a cause of action so long as one party consented to the recording. *Id.* § 77-23a-4(7)(b).

In *Thompson v. Dulaney*, 970 F.2d 744, 748 (10th Cir. 1992), the Tenth Circuit recognized that "consent . . . will take many fact patterns out of [FWA] liability." Specifically, § 2511(2)(d) "provides an exception to the prohibition against recording oral communications and specifies that the interception of oral communications is not unlawful . . . where a party to the conversation is either the one who has intercepted the conversation or who has consented to the interception, and the interception is not for the purpose of committing any criminal or tortious act." *Roberts v. Americable Int'l Inc.*, 883 F. Supp. 499, 503 (E.D. Cal. 1995); *see also Stewart*, 47 F.4th at 1135. "It is clear from the case law that Congress intended the consent exception to be interpreted broadly." *Thompson v. Dulaney*, 838 F. Supp. 1535, 1543 (D. Utah 1993). Therefore, there are two instances where the consent exception does not apply: (1) if the person recording is not a party to

the conversation, and (2) if the communication is recorded for the purpose of committing a criminal or tortious action.   18 U.S.C. § 2511(20(d).

Provo Canyon alleges that "Bliss inevitably recorded conversations . . . to which he was not a party." Compl. ¶ 68. Bliss, however, asserts that Provo Canyon alleges no facts to support this assertion, it simply declares that such recordings were inevitable. But Provo Canyon has alleged that Bliss was shadowing other employees who were interacting with patients. The Complaint, therefore, alleges that Bliss recorded conversations he was not a part of but merely observing—that is the definition of shadowing. The allegation is not speculative or conclusory. The fact pattern explains Bliss's role in relation to other employees and patients. Bliss's consent would not preclude a cause of action based on those types of conversations.

Bliss claims that even if Provo Canyon properly pled that Bliss intercepted such conversations, that conduct is not actionable under the FWA because the statute "requires that interceptions be intentional before liability attaches, thereby excluding inadvertent interceptions." *Thompson*, 970 F.2d at 748. Bliss claims that to the extent that he overheard conversations involving third parties, the theoretical interception of such conversations would only constitute an inadvertent interception, which is not actionable under the FWA.

While Bliss could develop facts and evidence to support his claim that he only inadvertently intercepted third party conversations to support a defense later in this litigation, the Complaint adequately alleges a fact pattern demonstrating that he intentionally and purposefully intercepted those third-party conversations. Provo Canyon alleges that he recorded the entire time he was at its facility. If those are not the correct facts, the parties will have to address what actually happened in discovery. Bliss has not attempted to counter the allegations in the Complaint by claiming that he intentionally never recorded when he was not a party to the conversation or when

he was just observing another employee interacting with a patient.

Bliss further argues that even if these "inadvertent" interceptions were actionable, such statements do not meet the statutory definition of "oral communications" and are, therefore, not protected by the FWA. Again, the court does not believe that the allegations in the Complaint support the assertion that Bliss's interceptions were inadvertent. The allegations in the Complaint provide a fact pattern of intentional recording. In any event, to qualify as an "oral communication," the person speaking must have a "reasonable expectation of privacy." Bliss claims that in the scenario Provo Canyon posits, where Bliss overheard a conversation, the participants could not claim a reasonable expectation of privacy. "If a person knowingly exposes statements to the 'plain view of outsiders,' such statements are not protected . . . because the speaker has not exhibited an 'intention to keep them to himself.'" *United States v. Longoria*, 177 F.3d 1179, 1182 (10th Cir. 1999).

However, these hypothetical conversations would have been in front of a new employee who was being trained and had signed confidentiality agreements and agreed to abide by HIPAA regulations. Bliss cannot reasonably argue that there was no expectation of privacy in such a private and secure setting. A psychiatric youth treatment center is a place with a high expectation of privacy. Federal law recognizes that privacy right. Bliss had to engage in an elaborate scheme to gain access to that private information otherwise he would have never overheard the communications.

The court concludes that Provo Canyon's Complaint alleges sufficient facts to support a plausible violation of the state and federal wiretap laws based on some of Bliss's recordings.

      d.  Trespass

Bliss argues that Provo Canyon's claim for trespass also fails. "The essential element of

trespass is physical invasion of the land; trespass is a possessory action." *Walker Drug Co. v. La Sal oil Co.*, 972 P.2d 1238, 1243 (Utah 1998). "The gist of an action of trespass is infringement on the right of possession." *John Price Assoc. v. Utah State Conf. Bricklayers Locals Nos. 1, 2, & 6*, 615 P.2d 1210, 1214 (Utah 1980).

Here, Bliss argues that he did not trespass because he was invited onto the property. Provo Canyon admits that it hired Bliss and subsequently invited him onto its property. But Provo Canyon argues that its consent was given under false pretenses and Bliss's alleged misrepresentations negated its consent.

In *Animal Legal Def. Fund v. Herbert*, 263 F. Supp. 3d 1193 (D. Utah 2017), the court considered the question presented here: "whether a person who lies to obtain permission to access private property is a trespasser." *Id.* at 1202. The court concluded that "lying to gain entry, without more, does not render someone a trespasser." *Id.* at 1205. "[A] liar does not become a trespasser merely because a property owner would have withheld consent to enter the property had he known the truth." *Id.* at 1204. To rise to the level of trespass, the defendant must cause "harm of the type the tort of trespass seeks to protect—interference with ownership or possession of the land." *Id.* at 1203.

The court concluded that it "depends on the type of harm (if any) the liar causes." *Id.* at 1202-03. "[T]he liar who causes no trespass-type harm—the restaurant critic who conceals his identity, the dinner guest who falsely claims to admire his host, or the job applicant whose resume falsely represents an interest in volunteering, to name a few—is not guilty of trespassing (because no interference has occurred)." *Id*. Bliss contends that his situation is like this list of non-trespassing acts that do not amount to a trespass. But Provo Canyon argues that the more analogous list in *Herbert* is the list of misrepresentations "caus[ing] harm of the type the tort of

trespass seeks to protect": "a competitor who enters a business to steal secrets while posing as a customer is a trespasser, as is the man who is invited into a home while posing as a repairman, but is in fact just a busybody looking to snoop around (because both have interfered with ownership or possession of the property)." *Id.* at 1203. Like the secret shopper and the busybody, Provo Canyon claims that Bliss lying to gain access to Provo Canyon's facility to steal confidential information and record staff and patients is a trespass.

The *Herbert* case relied on two circuit court cases--the Seventh Circuit case in *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345 (7th Cir. 1995), and the Fourth Circuit case in *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 517 (4th Cir. 1999). In *Desnick*, ABC sent "test patients" into eye clinics to secretly record their examinations. 44 F.3d at 1348, 1352. In *Food Lion*, ABC reporters misrepresented their work experience on their resumes to acquire jobs at a grocery store where they secretly recorded health violations. 194 F.3d at 510-11. In both cases the courts concluded that "lying to gain entry, without more, does not render someone a trespasser." Herbert, 263 F. Supp. 3d at 1205. But the *Food Lion* court "ultimately upheld the reporter's trespass convictions, concluding that although their consent to enter was not vitiated by the lies on their resumes, they subsequently exceeded the scope of that consent by recording non-public areas of the store." *Id.* at 1205 n.67. Similarly, in this case, Provo Canyon alleges that Bliss exceeded the scope of the consent by recording non-public conversations and records. Bliss was invited to enter the premises as an employee and could have worked indistinguishably from the other regular employees without exposing himself to a trespass claim. *See id.* But he exceeded the scope of a regular employee when he recorded private conversations and took confidential healthcare information from the premises. *See id.*

In *Desnick*, the reason the "test patients" did not invade the clinic's interest in possession of

the land was because the offices were "open to anyone expressing a desire for ophthalmic services." *Id.* at 1352. Provo Canyon argues that there is no analogy between pretending to be a patient and recording your own exam, and what Bliss allegedly did here—recording other patients in the midst of receiving psychiatric care. The court agrees that Provo Canyon has adequately pled that there was nothing similarly open about the Provo Canyon facility. Bliss did not pretend to be a patient and then reveal his experiences. He sought a job and agreed to the same confidentiality agreements that a regular employee at Provo Canyon agrees to as part of their employment at Provo Canyon, and then allegedly exceeded what was allowed under those requirements. The parties could engage in discovery on whether Bliss in fact exceeded the scope of a regular employee, but the allegations are adequate to survive a motion to dismiss on this claim.

The court concludes that Provo Canyon has alleged sufficient facts to state a plausible claim for trespass because Provo Canyon alleges that Bliss exceeded the scope of his invitation onto the property and caused harm by recording private interactions and documents. Therefore, the court does not find that there is a basis for dismissing Provo Canyon's trespass claim.

e.   Intrusion Upon Seclusion

Provo Canyon alleges a claim against Bliss for intrusion upon seclusion. To establish a claim of intrusion upon seclusion under Utha law, Provo Canyon must prove "(1) that there was "an intentional substantial intrusion, physicially or otherwise, upon the solitude or seclusion of the complaining party," and (2) that the intrusion "would be highly offensive to the reasonable person." *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997). The *Stien* court stated that "this holding comports with the view expressed in the Restatement." *Id.* (adopting Restatement (Second) of Torts § 652B (1977)).

Bliss also argues that Provo Canyon's claim for intrusion upon seclusion fails because

Provo Canyon has "no personal right of privacy" under Utah law. *See* Restatement (Second) Torts § 6521, cmt. c; Section 6521 of the Restatement (Second) torts addresses the issue of whether a corporation can sustain a claim for intrusion upon seclusion: "A corporation, partnership, or unincorporated association has no personal right of privacy. It has therefore no cause of action for any of the four forms of invasion covered by §§ 652B to 652E." *Id.* at § 6521, cmt. c.

Provo Canyon argues that while the Utah Court of Appeals cited to Restatement (Second) Torts and stated that the elements of the tort under Utah law comports with the view expressed in the Restatement, the Utah Supreme Court has never adopted the Restatement. However, the Utah Court of Appeals specifically drew directly from section 652 in defining the contours of an intrusion upon seclusion claim, and this court finds no reason for deviating from that decision.

Although the types of intrusive conduct Provo Canyon alleges is similar to that discussed in *Stien*, Provo Canyon would need an underlying right to privacy to assert a claim for intrusion upon seclusion. "The overwhelming majority of courts has ruled that corporations do not enjoy a right to . . . privacy." *Hearts With Haiti, Inc. v. Kendrick*, 2015 WL 3649592, at *7 (D. Me. June 9, 2015). Because *Stien* expresses that Utah law should be in line with the Restatement, the court concludes that Provo Canyon cannot assert an intrusion upon seclusion claim. Therefore, the court grants Bliss's motion to dismiss the intrusion upon seclusion claim.

f.   Conversion

Provo Canyon asserts a conversion claim against Bliss based on his receipt of training materials he would not have received but for allegedly misleading Provo Canyon into hiring him. Provo Canyon willing provided the materials to Bliss when it assumed he was a genuine employee. However, Provo Canyon asserts that it would not have willingly provided the materials to Bliss if it had known that he was there under false pretenses. One of the most common ways conversion

occurs is when someone obtains property under false pretenses. *See Loney v. U.S.*, 151 F.2d 1, 4 (10th Cir. 1945) ("Where a person intending to steal another's personal property obtains possession of it, although by or with the consent of the owner, by means of fraud or through a fraudulent trick or device, and feloniously converts it pursuant to such intent, the owner will be regarded as having retained constructive possession. Hence, in such cases the conversion constitutes a trespass.").

Provo Canyon alleges that the training materials Bliss took, even if only copies, belong to Provo Canyon and contain sensitive information that could imperil patients and staff if they are disseminated to the general public. "A conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958); *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 1999 UT 13, ¶ 20, 974 P.2d 288. "A basic requirement of conversion is '[t]hat there be a wrongful exercise of control over personal property in violation of the rights of its owner.'" *Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 30, 305 P.3d 196. "[A] conversion does not occur until the defendant exercises control over property that is inconsistent with the plaintiff's right of possession to that property." *Fibro Trust,* 1999 UT ¶ 20.

Provo Canyon alleges that Bliss took the training materials unlawfully and for purposes of disseminating the highly sensitive information to the public and, in doing so, has deprived Provo Canyon of its use of the training materials. For example, Provo Canyon contends that once safety procedures are disseminated to the public, they compromise the safety of staff and patients and no longer serve their intended purpose.

Bliss argues that Provo Canyon cannot sate a claim for conversion because it admits that it willingly provided training materials to Bliss as part of his orientation process. Although Provo

Canyon contends that Bliss's receipt of the training materials was "wrongful" because he was hired under false pretenses, Bliss claims that Provo Canyon has alleged no facts to support the notion that Bliss acquired the training materials "without lawful justification" and there is nothing unlawful about receiving training materials from one's employer as part of its training process.

However, even though a party has a right to something—Bliss had a right to training materials as an employee—that does not mean that they cannot be liable for conversion if it is misused. In *Fibro Trust*, a party had legal title to shares of stock that had been voluntarily transferred to it. *Id.* ¶ 21 But the party that had voluntarily transferred the shares did it pursuant to a contractual agreement that required the other party to hold the shares in trust. *Id.* Instead of holding the shares in trust, the other party transferred title to the shares to a third party in breach of their agreement. *Id.* The *Fibro Trust* court held that the fact that the party "held legal title to the shares does not necessarily foreclose Fibro's conversion claim." *Id.*

Just because Bliss may have had a right to receive the training manual like any other employee does not give him a right to share its contents with the public. If Bliss exercises his control over the materials to make them public, then his exercise of control over the materials becomes inconsistent with his right as an employee to possess those materials. Provo Canyon also alleges that Bliss had no right to retain the training materials after his employment ended. Such allegations support a finding that Bliss's control over the materials after his employment ended is inconsistent with his right to possess that property.

Bliss argues that the claim should be dismissed as a matter of law because he was only given a copy of the training materials and Provo Canyon cannot allege it has been "deprived of its use and possession" of the training materials. *Fibro Trust*, 1999 UT 13, ¶20. But Provo Canyon's allegations that making elements of its training manuals public compromises safety precautions it

uses at its facility raises the possibility that Provo Canyon has been deprived of the training manual's use because it would need to create new safety protocols and new manuals because the prior protocols and manuals are compromised.

Bliss further argues that a claim for conversion "is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information" by the Utah Uniform Trade Secrets Act. *Soundvision Techs., LLC v. Templeton Grp. Ltd.*, 929 F. Supp. 2d 1174, 1197 (D. Utah 2013). Bliss claims this is true regardless of "whether that information meets the statutory definition of a trade secret." *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 45, 274 P.3d 317.

"Generally, courts addressing this issue have agreed that a preliminary examination of the facts underlying the non-UTSA claim is necessary to determine whether a claim is preempted." *Id.* ¶ 47. "'[I]f proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective o[f] whatever surplus elements of proof were necessary to establish it.'" *Id.* (citation omitted). "However, to whatever extent that a claim is 'based upon wrongful conduct independent of the misappropriation of trade secrets' or otherwise confidential information, it is not preempted." *Id.* (citation omitted).

*CDC Restoration* did not involve a conversion claim. But, in *Soundvision*, the court ruled that a conversion claim was preempted by the UTSA "to the extent it is a claim that the designs and concepts used to develop the property are trade secrets or confidential," but then the court also analyzed the conversion claim on its merits to the extent that the party was asserting a property interest in the actual products developed. 929 F. Supp. 2d at 1197. Therefore, it did not rule that all conversion claims are preempted. It depends on the factual scenario involved in the case.

Provo Canyon does not assert that the training materials are trade secrets, but it seeks the

actual training materials returned to it. Provo Canyon asserts that part of its conversion claim is based on the fact that Bliss intends to make the training materials public and such disclosure could endanger staff and patients. That potential disclosure would appear to be similar to misappropriating confidential information. But Provo Canyon's claim also encompasses merely obtaining the materials under false pretenses and keeping the materials after his employment ended. Because of the risk to security at the facility, Provo Canyon alleges that it will have to change safety protocols if Bliss keeps the materials.

As in *Soundivision*, based on the allegations of Provo Canyon's Complaint, it is possible that some of the claim may be preempted and some of it may be able to go forward. The court does not believe it is in a position at this stage of the litigation to determine that the entire claim is preempted as a matter of law. Therefore, the court denies Bliss's motion to dismiss this cause of action.

Based on the above reasoning, the only claim that the court concludes fails as a matter of law is Provo Canyon's intrusion upon seclusion claim. Provo Canyon has sufficiently pled the remaining causes of action to the extent necessary to survive a motion to dismiss. Given the lack of information before the court, several issues must be addressed in discovery. Accordingly, the court concludes that Bliss has failed to meet his burden under UPEPA, Utah Code Ann. §§ 78B-25-101, *et. seq.*, to dismiss Provo Canyon's claims as a matter of law.

### Plaintiffs' Motion for Preliminary Injunction

Under Rule 65(b) of the Federal Rules of Civil Procedure, Provo Canyon seeks a preliminary injunction to avoid any harm resulting from Bliss's conduct. The applicant for a preliminary injunction "must show (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the relief is denied; (3) the threatened injury outweighs the harms

that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."

Bliss argues that the requested relief Provo Canyon seeks in its injunction "mandates action" and "changes the status quo" and, therefore, Provo Canyon's injunction is a disfavored injunction under Tenth Circuit law. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004). However, the requested injunction would not change the status quo. "The status quo refers to the last peaceable uncontested status existing between the parties before the dispute developed." *ACLU v. Praeger*, 815 F. Supp. 2d 1204, 1208 (D. Kan. 2011). The last peaceable uncontested status between these parties is before Bliss was hired under false pretenses. The heightened standard for changes to the status quo does not apply.

Provo Canyon's requested injunction requires Bliss to return any and all videos, audio, photographs, or other recordings taken at any Provo Canyon facility." However, the mere request for return of the footage, photographs, and documents is not the type of mandatory action that is disfavored by courts. The reason preliminary injunctions that seek mandatory action are disfavored is "because they affirmatively require the nonmovant to act in a particular way, and as a result, they place the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *O Centro*, 389 F.3d at 979.  Provo Canyon does not seek relief that would make Bliss act in a certain way that would require ongoing supervision. Bliss would only be required to return the footage, photographs, and documents he obtained while at Provo Canyon. Therefore, the requested injunction is not a disfavored injunction that would require a heightened standard.

## 1. Likelihood of Success on the Merits

As discussed above in connection with Bliss's Motion to Dismiss, Provo Canyon brings

seven causes of action against Bliss, five of which are at issue on this preliminary motion. Provo Canyon must make a "clear showing" this its likelihood of prevailing is "substantial." *Nav. Techs., Inc. v. Fugate*, No. 2:21-CV-00356-JNP, 2021 WL 2982065, at *9 (D. Utah July 15, 2021).

The court declined to dismiss the five causes of action Provo Canyon relies on to move for a preliminary injunction—its breach of contract, fraudulent misrepresentation, state and federal wiretap acts, and conversion claims. Provo Canyon states that it does not seek to prevent Bliss's criticisms of it. Through its causes of action, Provo Canyon seeks to prevent Bliss from disseminating footage of its staff and the healthcare it provides to a vulnerable adolescent population, which Bliss is contractually and legally bound to protect.

Bliss claims that he has no intention of disclosing patient information, and the court should just accept that agreement without imposing an injunction. But he allegedly took that information despite his knowledge that it was confidential. He executed multiple agreements in which he agreed to protect the confidentiality of Provo Canyon, its staff, and residents. The First Amendment does not give Bliss the right to breach contracts, ignore privacy regulations, or violate wiretapping laws, and if he has no intention of doing so an injunction should not be a hindrance to him. Although Bliss argues that he should be allowed to police himself in deciding what information is confidential, he has not come forward with any detailed description of the information he has or intends to use. The uncertainty as to the extent of the information he took requires the court to rely on Provo Canyon's allegations that he recorded everything while he was at Provo Canyon's facilities. Those recordings could contain a substantial amount of confidential information. The court does not believe that having an injunction in place until such time as the necessary discovery has occurred to discover what he has and what is confidential is a prior restraint on Bliss's free speech rights. First Amendment rights may be waived by contract and may

need to give way to statutory and regulatory protections. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991) (finding no First Amendment right for the press to disregard an agreement to maintain confidentiality in exchange for information where the agreement would be enforceable under state law). This court has already recognized limits on First Amendment assertions when a party has contracted away their rights or is otherwise bound by federal laws. *Homeworx Franchising LLC v. Meadows*, No. 2:09CV11DAK, 2009 WL 211918, at *2 (D. Utah Jan. 26, 2009) (observing parties cannot "invoke the first amendment to recapture surrendered rights"); *XMission, L.C. v. Click Sales, Inc.*, No. 2:17CV1287DAK, 2019 WL 3769866, at *2 (D. Utah Aug. 9, 2019) ("Click Sales does not have a First Amendment right to send emails in violation of the CAN-SPAM Act.").

While the court recognizes that there are many facts that need to be addressed in discovery and a lot could change during discovery, the court finds that Provo Canyon has established a likelihood of success in connection with at least portions of Bliss's breach of contract, fraudulent misrepresentation, and wiretap claims. Therefore, this element supports the implementation of a preliminary injunction.

### 2. Irreparable Harm

Provo Canyon argues that if Bliss releases videos containing patient PHI and communications, it will be distributed to a wide audience on the internet and that can never be undone. Also, if Bliss releases the recordings, Provo Canyon claims it will face irreparable harm to its reputation, its employees and patients could face safety risks, and the release of sensitive information could compromise its operations.

In contrast, Bliss argues that Provo Canyon fails to make a showing of irreparable harm—either actual or probable—which is "the single most important prerequisite" for the

issuance of a preliminary injunction. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). "Establishing irreparable harm requires more than speculation and conclusory statements. The mere possibility of irreparable harm is insufficient to justify a preliminary injunction: 'Issuing a preliminary injunction based on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *LL&L Innovations, LLC v. Jerry Leigh of California, Inc.*, No. 2:10-CV-829-TC, 2010 WL 3956815, at *9 (D. Utah Oct. 8, 2010) (citing *Winter v. HRDC, Inc.*, 555 U.S. 7, 22 (2008)).

Bliss argues that Provo's vague, speculative, and conclusory allegations are insufficient to establish a "certain, great, [and] actual" injury because Provo Canyon argues speculative harms regarding material that Bliss has not disclosed. Bliss claims that Provo Canyon has not established that Bliss intends to release video footage he recorded while working at Provo Canyon or that the release is "imminent." But those arguments ignore the allegations in the Complaint that Bliss obtained a position at Provo Canyon to obtain information for a film, which is what he actually does for a profession, he can be seen on surveillance footage recording sensitive documents and interactions throughout his time at Provo Canyon, which would be a substantial amount of footage, and that he abruptly quit when he thought he had been discovered. In connection with this lawsuit, Bliss is arguing that restraining his right to release what he obtained would be a prior restraint on his free speech rights. Bliss has not denied that he made the alleged recordings and has not argued that he has no intention of using the information he obtained.

While Bliss claims that he has never expressed or suggested any intent to violate HIPAA

laws or infringe the privacy rights of patients, he took that information and has not agreed to return it. He has admitted that he intends to use some information he obtained in a film or video addressing what he claims to be a matter of public concern. If Bliss did not intend to use the materials in some way, he would have no reason for opposing the injunction. In this fact scenario, the court does not find Provo Canyon's claims of irreparable harm to be speculative. The purpose of the requested injunction is to prevent Bliss from releasing any of the confidential information until it can be determined what he has a free speech right to retain and use.

A plaintiff meets the irreparable harm prong "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video*, 269 F. 3d at 1156. If Bliss were to release information later deemed to be confidential, the release would have already occurred, and an award of damages would be both inadequate and difficult to ascertain. Bliss's continued possession and intent to disseminate sensitive materials is causing harm to Provo Canyon and the Provo Canyon community. Concerned parents and patients have already contacted Utah authorities to investigate, and Bliss's attempts to downplay the gravity of the situation is unavailing.

The court again notes that a lot of facts need to be discovered in this case, but based on the facts alleged in Provo Canyon's Complaint and Bliss's admissions that he intends to release footage he obtained at Provo Canyon, the court cannot accept Bliss's assertion that there is no potential irreparable harm because the court should trust him to determine for himself what is appropriate to release on the internet. Such releases are essentially permanent and can occur after the parties exchange discovery and bring the issues fully before the court.

Therefore, the court concludes that Provo Canyon has demonstrated that without a preliminary injunction, there is a high likelihood that irreparable harm would occur.

### 3. Balance of Harms

Provo Canyon contends that the protection of vulnerable adolescents outweighs any risk of harm to Bliss' First Amendment rights. Bliss argues that Provo Canyon asks this court to engage in an unconstitutional act of prior restraint.

"For many years it has been clearly established that any prior restraint on expression comes . . . with a heavy presumption against its constitutional validity." *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (cleaned up). "Although the prohibition against prior restraints is by no means absolute, the gagging of publication has been considered acceptable only in 'exceptional cases.'" *Id.* "Even where questions of allegedly urgent national security or competing constitutional interests are concerned, [the Supreme Court] ha[s] imposed this 'most extraordinary remedy' only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures." *Id.* (cleaned up).

The Supreme Court has "refused to suppress publication of papers stolen from the Pentagon by a third party." *Id.* at 1318. "The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 390 (1973).

However, Bliss's arguments completely ignore the fact that he signed confidentiality agreements. His situation is not analogous to a traditional news reporter. The court is not disregarding his assertions that the proposed injunction violates his First Amendment rights, but it must recognize that his First Amendment rights in this case are tempered by his contractual obligations, healthcare privacy laws and regulations, and state and federal wiretap laws. Provo Canyon is not alleging only economic or reputational harm. It is attempting to protect its patients.

Provo Canyon is not trying to prevent Bliss from reporting on the "troubled teen" industry, but he must do so in the context of the agreements he signed, healthcare privacy laws, and wiretap statutes.

While the court believes that Bliss has free speech rights to cover the "troubled teen" industry, requiring Bliss to turn over any documents, footage, and recordings he took from and while he was at Provo Canyon before the parties can fully address the merits of the claims before the court is not more harmful than allowing confidential and sensitive information from being released on the internet where it will live forever. Therefore, the court concludes that the balance of harms element weighs in favor of Provo Canyon with respect to patient information and confidential information that could impact the safety of Provo Canyon's operations.

### 4. Public Interest

While the court recognizes that a preliminary prior restraint of First Amendment rights is contrary to public policy, Bliss's free speech rights are not unlimited. Courts have found that where defendants infiltrate another's property with intent to disregard confidentiality provisions they agreed to and secretly record those on the property, enjoining defendants' breach of confidential material is not against public policy. *See, e.g., Nat'l Abortion Fed'n v. Ctr. For Med. Progress*, No. 15-CV-03522-WHO, 2016 WL 454082, at *20 (N.D. Cal. Feb. 5, 2016). The court concludes that enjoining Bliss from releasing materials on the internet that he should not possess or release under his confidentiality agreements, healthcare privacy regulations, and wiretap laws until the parties and court can fully address the merits of Provo Canyon's claims is not against public policy.

Based on the above analysis, the court finds that Provo Canyon has met all the elements for obtaining a preliminary injunction with respect to portions of its claims. The court recognizes that

there are many aspects of Bliss's experience at Provo Canyon that can be shared and used without running afoul of the agreements he signed, healthcare privacy regulations, and state and federal wiretap laws. But Provo Canyon has adequately demonstrated that it is entitled to an injunction to protect its and its patients' interests. At this preliminary stage of the litigation, the court and parties are handicapped in many respects because of the unknown nature of the materials Bliss possesses. Bliss did not immediately come forward with a clear picture of what he has in his possession. But that can be addressed through the requirements of the injunction and discovery. While the court enters this order based on the initial allegations of the Complaint, which appear to support plausible claims, the court recognizes that as facts are discovered, the analysis of the asserted claims may change. However, at the present time, the court concludes that it is appropriate to grant Provo Canyon's requested motion for preliminary injunction, in part.

### 5. Expedited Discovery

Provo Canyon also asks for expedited discovery under FRCP 26 and FRCP 34 for the purpose of identifying (1) all visual and audio recordings Bliss took while at Provo Canyon's facility, (2) all Provo Canyon documents Bliss has in his possession, (3) any other materials in Bliss's possession that may contain Provo Canyon patient PHI, (4) information relating to Bliss's decision to target Provo Canyon and whether any person assisted him, and (5) the extent to which any information Bliss obtained from Provo Canyon has already been disseminated.

The court finds that Provo Canyon has met its burden of showing good cause to conduct expedited discovery on the requested topics. The parties should meet and confer on an expedited schedule for deposing Bliss, turning over documents, and inspecting the sunglasses, hat, cell phone, and other recording devices Bliss had on the Provo Canyon property.

**Preliminary Injunction Order**

Until such time as discovery is completed and the court can fully address the merits of Provo Canyon's causes of action, Bliss is preliminarily enjoined as follows:

1. Bliss is preliminarily enjoined from publishing or otherwise disclosing, posting, sharing, uploading, downloading, transferring, or any other means of disseminating, to any third party (other than his attorney) any video, audio, photographic, or other recordings taken, or any confidential information learned while employed by Provo Canyon that relates to any individual patient's treatment or care or any matters that could impact the safety of Provo Canyon's operations;

2. Bliss is preliminarily enjoined from publishing or otherwise disclosing to any third party any Patient Health Information or other records or physical documents Bliss obtained while at Provo Canyon or otherwise obtained pertaining to any Provo Canyon patient;

3. Bliss is preliminarily enjoined from reporting or otherwise sharing information relating to any confidential aspects of his employment;

4. Bliss is required to provide Provo Canyon with any and all video, audio, photographic or other recordings taken at any Provo Canyon facility;

5. Bliss is required to return any and all confidential information and PHI obtained from Provo, including any information or documents received from Provo's staff and any patients;

6. Bliss is enjoined from disclosing information contained in any training materials received in connection with his orientation and hiring at Provo that could relate to patient care or safety until the court has determined whether it is confidential and such materials must remain in the custody of Bliss's attorney;

7. Bliss is required to certify that he has not disseminated materials to any person (other

than his attorney) or otherwise uploaded or transmitted the materials to any server or cloud;

8. Bliss is required to preserve all documents and communications relating to his alleged employment scheme with Provo Canyon; and

9. Bliss's attorney shall remain in possession of Bliss's disputed materials for purposes of litigating this case and shall maintain their confidential nature and prohibit their disclosure.

The parties should meet and confer as to the reasonable timing for turning over materials.

## CONCLUSION

Based on the above reasoning, Defendant Robert Bliss's Motion to Dismiss [ECF No. 30] is GRANTED IN PART AND DENIED IN PART. Provo Canyon's intrusion upon seclusion claim is dismissed as a matter of law. Plaintiff Provo Canyon's Motion for Temporary Restraining Order [ECF No. 3] is GRANTED IN PART AND DENIED IN PART. The court has modified some of the requested injunction.

DATED this 24th day of September 2024.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE